UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHARLIE J. MCCLENDON,<br>      Plaintiff, | |
| v. | CASE NO. 3:14-cv-1460 (VLB) |
| WARDEN P. MURPHY, ET AL.,<br>      Defendants. | June 23, 2015 |

RULING AND ORDER

The plaintiff, Charlie J. McClendon, currently incarcerated at Cheshire Correctional Institution ("Cheshire"), filed this civil rights complaint *pro se* pursuant to 42 U.S.C. § 1983. He names Warden Peter Murphy, Captains M. Beaudry and Mainly, Lieutenant Pain, Intelligence Officials Allen and Perze and Investigator Roy as defendants. Pending before the court is the plaintiff's complaint and motion for appointment of counsel.

I.      Complaint [Doc. No. 1]

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id*. This requirement applies both where the inmate has paid the filing fee and where he is proceeding *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam). Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,' " does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to liberally construe a *pro se* complaint, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), the complaint must include sufficient factual allegations to meet the standard of facial plausibility.

The plaintiff alleges that on November 11, 2011, at MacDougall Correctional Institution ("MacDougall"), he received a notice that he was being placed on administrative detention. When defendants Beaudry, Pain, Allen and Perze came to his cell to escort him to the restrictive housing unit, they informed him that his name as well as his cellmate's name had come up in connection with an investigation and that he and his cellmate were both being sent to administrative detention. On November 14, 2011, defendants Beaudry and Pain interviewed the plaintiff regarding their investigation of inmates who might be involved in an up-coming protest to be held on January 4, 2012. The plaintiff learned that his

cellmate was the target of the investigation. The plaintiff stated that he knew nothing about the protest or his cellmate's involvement in the protest.

On November 14, 2011, the plaintiff wrote to defendant Murphy and Deputy Warden Guadarrama complaining that it was not fair that he had been placed in segregation for his cellmate's involvement in the protest and threatened to sue the Department of Correction for placing him in segregation. On November 15, 2011, defendant Perze issued him a disciplinary report for having contraband items in his cell. The contraband items had been discovered when prison officers had searched the plaintiff's cell after he had been transferred to administrative detention. Although the plaintiff conceded that he possessed the contraband items, he felt the disciplinary report was unfair because in the past, correctional staff had only issued informal reprimands for the same type of contraband. The plaintiff sent letters to defendant Murphy and Deputy Warden Guadarrama complaining about the issuance of the disciplinary report.

On November 21, 2011, defendants Beaudry, Mainly and Pain interviewed the plaintiff again and told him that he could not return to his housing block pursuant to orders from higher level prison officials. On November 23, 2011, a disciplinary hearing officer found the plaintiff guilty of the contraband charge and imposed sanctions. The plaintiff subsequently appealed the decision.

In late November 2011, defendant Roy informed the plaintiff that the sanctions had been deferred and that he would be transferred to another prison that day. On November 29, 2011, prison officials at MacDougall transferred the plaintiff to Cheshire Correctional Institution.

In early December 2011, the appeal of the disciplinary sanctions was returned to the plaintiff without a disposition, but included a notation that the disciplinary sanctions had been deferred and a request that the plaintiff indicate whether he wished to continue with his appeal in light of the deferral of the sanctions.  The plaintiff states that he indicated that he did not wish to pursue the appeal.  For relief, the plaintiff seeks monetary damages and injunctive relief in the form of an order that he be reinstated to his commissary job at the same rate of pay.

The plaintiff has responded to the court's order [Doc. No. 8] that he further document his attempts to exhaust his administrative remedies regarding his claims against the defendants.   The plaintiff filed a memorandum and exhibits. *See* [Doc. No. 9].  He alleges that on November 23, 2011, he filed an appeal of his disciplinary sanctions and a grievance regarding his placement in segregation in violation of his due process rights.   He also claims that on December 9, 2011, he filed a another grievance claiming that he had been placed in segregation illegally, he had been transferred from MacDougall after he threatened to sue the Department of Correction for placing him in segregation and he had lost his privileged job working in the commissary as a result of the transfer.  The plaintiff did not receive a response to his December 9, 2011 grievance so he filed an appeal on January 12, 2012.  He did not receive a response to the appeal.

In late December 2011, the plaintiff filed a complaint with the Office of the Claims Commissioner.  In November 2013, the Claims Commissioner granted the

4

respondent's motion to dismiss the plaintiff's claim.  The plaintiff did not appeal this decision.  The plaintiff also attempted to file a civil lawsuit in the Connecticut Superior Court, but is unsure whether a Connecticut marshal ever served the complaint.

The plaintiff has sufficiently alleged that he attempted to exhaust his claims with regard to his placement in segregation in violation of his due process rights, loss of his commissary job and his retaliatory transfer to Cheshire.   The plaintiff concedes that he did not pursue the appeal of the disciplinary sanctions.

    A.    <u>Disciplinary Report and Sanctions</u>

To the extent that the plaintiff is challenging the disciplinary sanctions he received after the disciplinary hearing officer found him guilty of possessing contraband, he has not exhausted that claim.   In addition, the plaintiff does not allege that any of the defendants denied him due process in connection with the hearing held to address the disciplinary report.

The plaintiff received notice of the disciplinary charge and appeared at the hearing.  The plaintiff states that although the disciplinary hearing officer found him guilty and imposed sanctions, prison officials deferred the sanctions.  Accordingly, the plaintiff suffered no harm as a result of the issuance of the disciplinary report and sanctions imposed by the disciplinary hearing officer.  Any due process claim related to the issuance of the disciplinary report and the sanctions imposed pursuant to the disciplinary hearing officers' finding of guilty is dismissed for failure to state a claim upon which relief may be granted.  *See* 28

U.S.C. § 1915A(b)(1).

### B. Placement on Administrative Detention

The plaintiff alleges that defendants placed him on administrative detention on November 11, 2011. He remained on administrative detention until he was transferred to Cheshire on November 29, 2011. Thus, the plaintiff spent at most nineteen days on administrative detention.

To state a claim for violation of procedural due process in connection with his placement in administrative detention, the plaintiff must show that he had a protected liberty interest and, if he had such an interest, that the defendants deprived him of that interest without being afforded due process of law. *See Sandin v. Conner,* 515 U.S. 472 (1995). He has a protected liberty interest only if the state created a liberty interest in a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship. *See Tellier v. Fields*, 280 F.3d 69, 81 (2d Cir. 2000). In *Hewitt v. Helms,* 459 U.S. 460, 472 (1983), the Supreme Court held that the process that is due an inmate who has been placed in administrative confinement consists of "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative [detention or] segregation" in an informal, non-adversary proceeding held "within a reasonable time following his transfer" to administrative confinement.

The plaintiff alleges that three days after transfer to a restrictive housing unit, defendants Beaudry and Pain clarified the reasons for his placement on

6

administrative detention and interviewed him as part of their investigation into an inmate protest that was to occur in January 2012.  They indicated that he was not the target of their investigation.

On November 15, 2011, defendant Perze issued the plaintiff a disciplinary report for having contraband items in his cell.  The plaintiff continued to be held on administrative detention pending the investigation and disposition of the disciplinary report.

On November 21, 2011, defendants Beaudry, Mainly and Pain interviewed the plaintiff again in connection with their investigation into the upcoming inmate protest.   On November 23, 2011, an officer conducted a disciplinary hearing with regard to the contraband charge.  The plaintiff participated in the hearing.   At the conclusion of the hearing, the disciplinary hearing officer found the plaintiff guilty and imposed sanctions of ten days of punitive segregation and thirty days of loss of recreation.  Prison officials transferred the plaintiff to Cheshire on November 29, 2011.

The plaintiff claims that while he was on administrative detention he could not go to work at his job in the commissary.   The plaintiff does not otherwise indicate that the conditions in the restrictive housing unit were unduly harsh.

The plaintiff's allegations demonstrate that the defendants provided him with the process that he was due with regard to his placement in administrative detention.  Furthermore, the plaintiff has not alleged that he possessed a liberty interest in avoiding placement in administrative detention because he does not

7

claim to have suffered the type of restrictive conditions of confinement that rise to the level of an atypical and signifcant hardship. *See Wilkinson v.* Austin, 545 U.S. 209 (2005) (holding inmates possessed liberty interest in avoiding placement in restrictive housing unit at maximum security prison because the conditions of confinement "taken together . . . impose[d] an atypical and significant hardship [on the inmates] in the correctional context"); *Sandin v. Conner,* 515 U.S. 472 (1995) (inmates have a protected liberty interest in avoiding disciplinary sanctions, including punitive segregation, only if the sanctions result in conditions of confinement that cause inmates to suffer an atypical and significant hardship when compared to ordinary prison conditions). Accordingly, the plaintiff's allegation that the defendants violated his due process rights in connection with his placement on administrative detention for nineteen days fails to state a claim upon which relief may be granted and is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

    C.    <u>Loss of Job</u>

The plaintiff claims that as a result of his placement in administrative detention and subsequent transfer to Cheshire, he lost his job in the commissary at MacDougall. Inmates have no constitutionally protected liberty or property interest in their job assignment. *See Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (holding that there is no constitutional right to a job without underlying state law mandating jobs for prisoners); *Banks v. Norton,* 346 F. Supp. 917, 921 (D. Conn. 1972) (noting that an inmate has no right to a particular job in a

correctional institution); *Santiago v. Comm'r of Corr.*, 39 Conn. App. 674, 680 (1995) (inmates have "no property or liberty interest in prison employment"); state of Connecticut Department of Correction Administrative Directive 10.1(4)A ("[n]o inmate shall have entitlement or a legitimate expectation to any work, programmatic or educational assignment or compensation therefor . . .").

Because the plaintiff has no property interest in his prison job, the fact that he lost his prison job in the commissary at MacDougall did not violate his Fourteenth Amendment due process rights. Accordingly, any due process claim related to the plaintiff's loss of his commissary job in November 2011 is dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).

    D.    <u>Equal Protection Claim</u>

The plaintiff states that he has the same right to equal protection as other inmates. He generally contends that the defendants violated his equal protection rights.

The Equal Protection Clause protects prisoners from "invidious racial discrimination." *See Overton v. Bazzetta*, 539 U.S. 126 (2003) (citing *Lee v. Washington*, 390 U.S. 333 (1968)). The Supreme Court has recognized that "[t]he Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To prevail on an equal

protection claim of racial discrimination, the plaintiff must show that he was treated differently from other similarly situated individuals as a result of intentional or purposeful discrimination based on his race.  See *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991).  To state a violation of the Equal Protection Clause under the "class of one" theory, a plaintiff must allege (1) that he has been intentionally treated differently from others similarly situated, and (2) that there is no rational basis for the treatment.  See *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The plaintiff claims that eleven inmates were sent to administrative detention in connection with the investigation of the upcoming inmate protest. Of those eleven inmates, three were sent to administrative detention because their cellmates were the targets of the investigation.   The plaintiff claims that he and the other two inmates who were not the target of the investigation also received disciplinary reports for contraband.   Thus, the plaintiff has not alleged that he was treated differently than other inmates who were sent to administrative detention because of alleged involvement of their cellmates in the upcoming inmate protest.  Thus, the plaintiff has failed to allege facts to support a plausible equal protection claim against the defendants.   The equal protection claim is dismissed.   See 28 U.S.C. § 1915A(b)(1).

E.     Retaliation Claim

The plaintiff asserts that on November 14, 2011, he wrote to defendant Murphy and a deputy warden at MacDougall complaining about his placement on

administrative detention and also threatened to sue Department of Correction employees who were responsible. On November 23, 2011, a disciplinary officer found the plaintiff guilty of possessing contraband. The plaintiff appealed the decision and filed a grievance regarding the earlier decision to place him on administrative detention. On November 29, 2011, defendant Roy informed the plaintiff that defendant Murphy had received his grievances regarding his placement on administrative detention and loss of his job, there was nothing more the administration could do for him and that he would be transferred to Cheshire later that day. The plaintiff claims that he lost his job and was transferred to Cheshire on November 29, 2011, in retaliation for his filing of grievances and complaints regarding his placement on administrative segregation at MacDougall.

    Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 2003). To state a retaliation claim, the plaintiff must show that his conduct was protected by the Constitution or federal law and that this protected conduct was a "substantial or motivating factor" in the alleged retaliatory action by prison officials. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003).

    The court concludes that the plaintiff has stated plausible claims of retaliation against defendants Roy and Murphy. *See Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir. 1998) ("prison authorities may not transfer an inmate in retaliation for

the exercise of constitutionally protected rights"); *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) ("a claim for relief under section 1983 may be stated if prison official's decisions to change work assignments "are made in retaliation for the exercise of constitutionally protected rights"). The retaliation claims will proceed against defendants Roy and Murphy.

The plaintiff does not include any specific claims of retaliation against defendants Beaudry, Mainly, Pain, Allen or Perze. Thus, any retaliation claims against those defendants are dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).

II. <u>Motion for Appointment of Counsel [Doc. No. 4]</u>

The plaintiff is seeking an appointment of *pro bono* counsel in this action. The Second Circuit repeatedly has cautioned the district courts against the routine appointment of counsel. *See, e.g., Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997); *Cooper v. A. Sargenti Co.*, 877 F. 2d 170, 172 (2d Cir. 1989). The Second Circuit has made clear that before an appointment is even considered, the indigent person must demonstrate that he is unable to obtain counsel. *See Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986).

The plaintiff states that he has made repeated efforts to find a lawyer to represent him in this matter. He does not indicate when he made these many attempts to find counsel, who he contacted or whether he received any responses to his requests. He claims that the Inmates' Legal Assistance Program takes too long to respond to requests for assistance. The plaintiff has

not shown that he cannot secure legal representation or assistance on his own. The possibility that the plaintiff may be able to secure legal assistance or representation independently precludes appointment of counsel by the court at this time.

## ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

(1) All claims that the defendants violated the plaintiff's Fourteenth Amendment Due Process and Equal Protection rights and the claims that defendants Beaudry, Mainly, Pain, Allen and Perze violated the plaintiff's First Amendment right to be free from retaliation are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).

(2) The First Amendment retaliation claims against defendants Roy and Murphy in their individual and official capacities will PROCEED.

(3) By July 14, 2015, the U.S. Marshals Service shall serve the summons, a copy of the complaint and this order on defendants Roy and Murphy in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(4) By July 14, 2015, the clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for defendant Peter Murphy and defendant Investigator Roy and mail a

> waiver of service of process request packet to each defendant in his or her individual capacity at his or her current work address. On the thirty-fifth (35th) day after mailing, the clerk shall report to the court on the status of all waiver requests. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(5) The clerk shall send a courtesy copy of the complaint, the response to the order to show cause and this order to Connecticut Assistant Attorney General Terrence M. O'Neill and the Department of Correction Legal Affairs Unit.

(6) Defendants Murphy and Roy shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the Notice of Lawsuit and Waiver of Service of Summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by January 25, 2016. Discovery requests need not be filed with the court.

**(8)** **All motions for summary judgment shall be filed by February 25, 2016.**

**(9)** **The Motion for Appointment of Counsel [Doc. No. 7] is DENIED without prejudice to refiling at a later stage of litigation.  Any renewal of this motion shall be accompanied by a summary of any attempts to obtain counsel or legal assistance, including the names of the attorneys contacted, the dates upon which plaintiff made those contacts and the reasons why assistance was unavailable.**

**SO ORDERED this 23rd day of June, 2015, at Hartford, Connecticut.**

                                                                                     _____/s/_____
                                                                                     **VANESSA L. BRYANT**
                                                                                      **United States District Judge**