UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

CHARLIE J. MCCLENDON,            :
    Plaintiff,                   :
                                       :
    v.                           :   Case No. 3:14cv1460(DJS)
                                       :
WARDEN P. MURPHY and             :
INVESTIGATOR ROY,                :
    Defendants.                  :

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, Charlie J. McClendon, is currently incarcerated at Cheshire Correctional Institution ("Cheshire") in Cheshire, Connecticut.  He initiated this action by filing a civil rights complaint naming Warden Peter Murphy, Captains M. Beaudry and Mainly, Lieutenant Pain, Intelligence Officials Allen and Perze, and Investigator Roy as defendants.  On June 23, 2015, the court dismissed all Fourteenth Amendment Due Process and Equal Protection claims and the claims that defendants Beaudry, Mainly, Pain, Allen and Perze violated the plaintiff's First Amendment right to be free from retaliation. The court concluded that only the First Amendment retaliation claims against defendants Roy and Murphy in their individual and official capacities would proceed.

On August 5, 2015, the plaintiff filed a motion for leave to file an amended complaint against Warden Murphy and

1

Investigator Roy.  On November 3, 2015, the court granted the motion to amend to the extent that it sought to clarify the retaliation claims against defendants Roy and Murphy and denied the motion to the extent that it sought to add a due process claim regarding the plaintiff's transfer to administrative segregation on November 11, 2011.  The court directed the clerk to docket the proposed amended complaint as the amended complaint and clarified that the claim of a violation of due process in connection with the plaintiff's transfer to administrative segregation on November 11, 2011, as set forth in the amended complaint, was dismissed for the same reasons it was dismissed in the court's prior Ruling.

Thus, the case proceeds only as to the claims in the amended complaint, ECF No. 23, of retaliation against defendants Murphy and Roy.  Defendants Murphy and Roy have moved for summary judgment.  For the reasons set forth below, the motion is granted.

I.   **Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving

2

party" based on it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." Robinson v. Concentra Health Services, Inc., 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted).  Thus, the party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Id. (internal quotation marks omitted).

If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, however, summary judgment is improper.  See Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004). In reviewing the record, the court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc., 716 F.3d 302, 312 (2d Cir. 2013).

Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them "to raise the strongest arguments that they suggest." Willey v. Kirkpatrick, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks omitted). Despite this liberal interpretation, however, "unsupported allegations do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. Weinstock v. Columbia University, 224 F.3d 33, 41 (2d Cir. 2000).

## II. **Facts**

An examination of the complaint and its exhibits, the amended complaint, defendants' local rule 56 statement, plaintiff's local rule 56 statement, exhibits accompanying the motion for summary judgment and responses thereto, discloses the following undisputed facts:

Prior to his transfer to Cheshire, the plaintiff was incarcerated at MacDougall-Walker Correctional Institution ("MacDougall-Walker"), a high/maximum security level facility in Suffield, Connecticut. On November 9, 2011, Captain Beaudry, who was a member of the Intelligence Office at MacDougall-Walker, received two typed documents from an inmate indicating that another inmate was putting together a list of demands for the prison administrators to meet regarding conditions of confinement at MacDougall-Walker.  Warden Murphy became aware

4

that on November 9 and 10, 2011, the MacDougall-Walker
Intelligence Office had received information from several
sources that inmates in J Pod housing unit were attempting to
recruit other inmates to become involved in concerted activities
that would affect the operation of the facility.  As part of the
planned activities, inmates were going to stop: (1) working; (2)
eating in the cafeteria; (3) buying items from the commissary;
and (4) using the prison mail system.  These activities were to
commence on January 4, 2012.

On November 11, 2011, prison officials placed J Pod housing
unit on lockdown.  On November 11, 12, 13, 2011, Captain
Beaudry, Captain Manley and Lieutenant Paine, who were all
members of the Intelligence Office, interviewed numerous inmates
in the J Pod housing unit and several inmates in other housing
units.

On November 11, 2011, Captain Beaudry came to the
plaintiff's cell and informed him that he and his cellmate were
being investigated and would be placed on administrative
detention pending the investigation.  On November 14, 2011,
Captain Beaudry, Captain Manley, and Lieutenant Paine
interviewed the plaintiff.  They informed him that they were
investigating an inmate protest planned for January 4, 2012 and
that the plaintiff's cellmate was a target of the investigation.
The plaintiff informed them that he had no knowledge of his

5

cellmate's involvement in the upcoming protest.  The plaintiff was told that he would be able to return to his cell in the J Pod unit and to his job in the commissary once the investigation was over.

Information gathered during the interviews of inmates from J Pod unit supported the possibility of a civil demonstration on January 4, 2012 to protest multiple issues regarding conditions of confinement at MacDougall-Walker.  Investigator Roy was involved in the investigation of the planned inmate protest.

A total of eleven inmates were placed on administrative detention because of their possible involvement in the planned protest.  On November 15, 2011, eight of the eleven inmates were suspected to have been involved in the planning/organizing of the protest and received disciplinary reports for impeding order.  On that same date, the plaintiff received a disciplinary report for possessing contraband in his cell.  The plaintiff does not dispute that he had contraband in his cell.

Captain Beaudry, Captain Manley, and Lieutenant Paine interviewed the plaintiff again on November 21, 2011 regarding the involvement of other inmates in the planned protest.  The plaintiff claimed that he had no knowledge of the protest or the involvement of other inmates in the protest.  He complained about a disciplinary report that he had received for contraband found in his cell and indicated that that this type of

6

infraction usually resulted in nothing more than an informal reprimand.  Captain Beaudry informed the plaintiff that he would not be returning to J Pod unit.  Captain Beaudry also informed the plaintiff that he would try to defer the disciplinary report issued in connection with the contraband.

On November 23, 2011, after a hearing on the contraband charge, a hearing officer found the plaintiff guilty and imposed sanctions of ten days of punitive segregation and thirty days loss of recreation.  On that same day, the plaintiff filed two grievances, one relating to his placement in administrative detention without a hearing and the other relating to the hearing officer's finding that he was guilty as to the contraband charge.

On November 29, 2011, the plaintiff met with Investigator Roy who informed him that the warden had received his grievances and that prison officials were willing to defer any further action regarding the sanctions imposed on the basis of the contraband charge. The plaintiff signed a form indicating that he agreed to not pursue this grievance any further in light of the deferral of the disciplinary report.  Lieutenant Roy also indicated that the plaintiff would be transferred to Cheshire later that day, and he was transferred to Cheshire that evening.

III. **Discussion**

Defendants Murphy and Roy assert two arguments in support of their motion for summary judgment. They argue that (1) the plaintiff fails to state a claim of retaliation against them, and (2) they are entitled to qualified immunity. In response, the plaintiff contends there are material facts genuinely in dispute, and, for that reason, the defendants are not entitled to summary judgment.

As a preliminary matter, the court notes that the plaintiff's Local Rule 56(a)2 Statement and his memorandum in opposition to the motion for summary judgment include a claim that he served a request for production of documents and interrogatories on the defendants in January 2016, but the defendants did not respond to these discovery requests. See Pl.'s Local Rule 56(a)2 Statement, ECF No. 34-1 at 6; Mem. Opp'n Mot. Summ. J., ECF No. 34-3 at 7-8 & Ex. G.

Federal Rule of Civil Procedure 56(d) permits a court, in the exercise of its discretion, to defer or deny a decision on summary judgment if a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Rule 56(d) requires "submitting an affidavit that includes the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what

8

efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." Whelehan v. Bank of America, 621 F. App'x 70, 73 (2d Cir. 2015)(internal quotation marks omitted).

When parties submit affidavits pursuant to Rule 56(d) which include insufficient or conclusory descriptions of forthcoming evidence or fail to show how that evidence would demonstrate the existence of a genuine issue of material fact, courts routinely deny requests to conduct further discovery. See, e.g., Gualandi v. Adams, 385 F.3d 236, 245 (2d Cir. 2004) (affirming district court's implicit denial of discovery where plaintiff failed to "demonstrate that additional discovery was needed in order to decide the jurisdictional issue"); United States v. Private Sanitation Industry Association, 995 F.2d 375, 377 (2d Cir. 1993) (affirming district court's denial of discovery where affidavit "only speculated about what further discovery might reveal" and failed to "describe[ ] in specific terms evidence that might be forthcoming and would demonstrate that a genuine issue actually existed"). Moreover, "[a] court is not required to withhold consideration of a summary judgment motion based on mere speculation." Roswell Capital Partners LLC v. Alternative Construction Technologies, 638 F. Supp. 2d 360, 372 (S.D.N.Y. 2009).

The plaintiff has not filed an affidavit or declaration in support of his implicit request to continue discovery.  Although he served his discovery requests before the deadline for completing discovery expired, he does not assert that he made any attempt to resolve any discovery dispute or to contact counsel for the defendants after serving his discovery requests. Nor did he file a motion to compel the defendants to respond to the requests.  Furthermore, the plaintiff has not demonstrated how any undiscovered evidence could create a genuine issue of material fact in this case.  Thus, the court concludes that the plaintiff has not met the necessary requirements of Rule 56(d) in order to grant him additional time to conduct discovery. Accordingly, the court will not defer ruling on the motion for summary judgment to permit the plaintiff to conduct additional discovery.

**A. Failure to State a Claim**

When prison officials take adverse action against an inmate, motivated by the inmate's exercise of a constitutional right, a section 1983 retaliation claim may be sustained. See Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws.").  At the same time, however, "because prisoner

retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, [courts] are careful to require non-conclusory allegations." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks omitted).

To state a First Amendment retaliation claim, a plaintiff must show that (1) his conduct or speech was protected by the Constitution; (2) prison officials took adverse action against him; and (3) there was a causal connection between the protected conduct or speech and the adverse action taken by prison officials.  See Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004). In order to demonstrate a causal connection, a plaintiff must show that his protected conduct or speech was a substantial motivating factor in the adverse action taken against him. See Smith v. County of Suffolk, 776 F.3d 114, 118 (2d Cir. 2015) (per curiam). If the plaintiff meets his burden of demonstrating all three prongs of the retaliation standard, "the defendants must show . . . that they would have [taken the adverse action against him] even in the absence of the protected conduct.  Thus, if taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks and citation omitted).

The defendants do not dispute that the plaintiff's filing of a grievance in which he threatened to file a lawsuit meets the first prong of the retaliation standard.  It is well settled that the filing of grievances and lawsuits constitutes protected activity for purposes of a First Amendment retaliation analysis. See Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015); Baskerville v. Blot, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002).

With regard to the second prong of the retaliation standard, the plaintiff claims that his transfer to another prison and the loss of his job in the commissary at MacDougall-Walker constituted adverse action.  Prison officials' conduct constitutes an "adverse action" when it "would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." Gill, 389 F.3d at 381 (internal quotation marks omitted).  The defendants do not dispute that under the second prong of the retaliation standard, a transfer to another prison and the loss of the opportunity to work constituted adverse action.

The defendants argue, however, that the plaintiff has not met the third prong of the standard.  With respect to the causation element of a retaliation claim, several factors may be considered in determining whether the requisite nexus exists between the plaintiff's protected activity and a prison official's actions, including whether the defendants made any

12

statements regarding their motivation in taking action against
the plaintiff, the temporal proximity between the protected
activity and the defendants' allegedly adverse action, and
whether there was a subsequent finding that the adverse action
was not justified or was improper.  See Espinal v. Goord, 558
F.3d 119, 129 (2d Cir. 2009) ("causal connection that suggests
retaliation" may be established if "protected activity was close
in time to the adverse action"); Bennett v. Goord, 343 F.3d 133,
138 (2d Cir. 2003)(circumstantial evidence of retaliation
"further supported by the fact that essentially all relevant
adverse actions by DOCS officials were subsequently found to
have been unjustified"); Colon v. Coughlin, 58 F.3d 865, 873 (2d
Cir. 1995)(inmate's allegation of admission by prison official
of the existence of a retaliatory scheme constituted direct
evidence of retaliatory conduct).

        The plaintiff asserts that he wrote to Warden Murphy and
the Deputy Warden at MacDougall-Walker on November 14, 2011,
complaining that it was unfair that he had been placed on
administrative detention given that he was not the target of the
investigation.  See Amended Compl., ECF No. 23 at 2.  In that
correspondence, which the plaintiff has not submitted to the
court, the plaintiff claims that he threatened to sue Warden
Murphy and the Deputy Warden over his placement on
administrative detention.  See id.  The plaintiff also claims

that on November 23, 2011, he filed a grievance regarding his placement on administrative detention.  See id. at 3.  He asserts that on November 29, 2011, Lieutenant Roy informed him that his letter of complaint and grievance had reached Warden Murphy and that he would be transferred later that day.  See id.

The plaintiff argues that his transfer shortly after Warden Murphy received his letter and grievance is evidence that the transfer was retaliatory.  A plaintiff alleging a First Amendment retaliation claim may not, however, rely on temporal proximity alone to defeat summary judgment.  See Faulk v. Fisher, 545 F. App'x 56, 58 (2d Cir. 2013)(although temporal proximity between protected conduct and adverse action constitutes circumstantial evidence of retaliation, "we have consistently required some further evidence of retaliatory animus before permitting a prisoner to proceed to trial on a retaliation claim"); Ziemba v. Thomas, 390 F. Supp. 2d 136, 157 (D. Conn. 2005) ("Temporal proximity alone is not sufficient for the plaintiff's claim [of retaliatory transfer] to survive summary judgment.").  Thus, in addition to the temporal proximity between the plaintiff's transfer and the exercise of his First Amendment rights, he must provide some non-conclusory evidence that raises an inference that the conduct of the defendants was due to "retaliatory animus."  Faulk, 545 F. App'x at 58.

14

For the first time, in his opposition to the motion for summary judgment, the plaintiff claims that Investigator Roy stated to him that the main reason for his transfer was his threat of a lawsuit that had been included in a letter to the warden regarding his placement in administrative detention.  Roy allegedly stated that prison administrators were very unsettled about the threat of a lawsuit.  These allegations were not included in the original complaint, the amended complaint, or in plaintiff's affidavit in opposition to the motion for summary judgment.  Rather, they are included in the plaintiff's unsworn memorandum and statement of undisputed facts in opposition to the motion for summary judgment.  See Pl.'s Local Rule 56(a)(2) Statement, ECF No. 34-1 at 6; Mem. Opp'n Mot. Summ. J., ECF No. 34-3 at 6.

The plaintiff cannot amend his complaint in a memorandum in opposition to a motion for summary judgment.  See Lyman v. CSX Transportation, Inc., 364 F. App'x 699, 701 (2d Cir. 2010) (affirming district court's determination that it should not consider claims raised for the first time in opposition to summary judgment); Auguste v. Department of Corrections, 424 F. Supp. 2d 363, 368 (D. Conn. 2006) (a plaintiff "cannot amend his complaint in his memorandum in response to defendants' motion for summary judgment").  Nor is the court inclined to permit the

plaintiff to further amend the complaint to add new allegations
against the defendants at this late stage in the case.

Even if the court were to credit the statements purportedly
made by Lieutenant Roy, the defendants contend that there was a
legitimate reason for the plaintiff's transfer to Cheshire.  The
defendants argue that the transfer would have occurred even if
the plaintiff had not filed a letter of complaint or a
grievance.

Warden Murphy avers that he was the warden of MacDougall-
Walker from 2007 until 2014.  See Murphy Aff. ¶ 2, ECF No. 29-2.
In November 2011, when he became aware of inmate involvement in
a planned protest at MacDougall-Walker, he was concerned about
the safety of the inmates involved in planning the protest, as
well as the other inmates at the facility and the facility
staff.  See id. ¶¶ 9-11.  Based on his experience within the
Department of Correction, Warden Murphy believed that there was
a high probability that the plaintiff did have some knowledge
about the planned protest.  See id. ¶ 13.  Furthermore, if the
plaintiff were returned to the J Pod housing unit, he may have
been viewed by other inmates in the unit as having provided
information about the leaders/organizers of the planned protest
to prison officials at MacDougall-Walker.  See id. ¶ 14.  This
perception or belief by other inmates in the housing unit could
have jeopardized the plaintiff's safety.  See id.  For both of

16

these reasons, the decision was made to transfer the plaintiff to Cheshire rather than to return him to the J Pod housing unit at MacDougall-Walker.  See id. ¶ 15.

Thus, Warden Murphy has provided an alternative basis for the transfer of the plaintiff to Cheshire that was based on prison safety and security concerns and not on the complaints and threats to sue that the plaintiff allegedly included in a letter and a grievance filed with Warden Murphy.  As the Second Circuit has acknowledged, "the conclusion that the state action would have been taken in the absence of improper motives is readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage."  Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir. 1994) (internal quotation marks omitted).  Because the defendants have submitted "a properly supported motion [for summary judgment], the plaintiff . . . must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive."  Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (emphasis added).

The plaintiff has failed to provide evidence that the sole basis for the alleged wrongful action, his transfer to Cheshire, was an improper retaliatory motive and not also due to another

17

valid reason.  See Graham, 89 F.3d at 79 (action that is taken for both valid and invalid reasons will not be deemed unconstitutional if the action would have been taken in any event for the constitutionally valid reason). Because the defendants have submitted a legitimate, non-retaliatory reason for the plaintiff's transfer to Cheshire, and the plaintiff has not submitted evidence that this basis for his transfer was invalid, he has not met his burden of demonstrating that the letter and grievances he filed constituted a substantial motivating factor for the transfer.  See Davidson v. Chestnut, 193 F.3d 144, 149 (2d Cir. 1999) (per curiam) ("At the summary judgment stage, if the undisputed facts demonstrate that the challenged action clearly would have been taken on a valid basis alone, defendants should prevail.").  The motion for summary judgment is granted in favor of defendants Murphy and Roy on the First Amendment retaliation claims.

### B. Qualified Immunity

The defendants also argue that they are entitled to qualified immunity. Because the court has ruled that the plaintiff's allegations do not state a claim of retaliation, it need not reach the qualified immunity argument.

**IV.   Conclusion**

For the reasons stated above, the Motion for Summary Judgment [**Doc. No. 29**] filed by Defendants Murphy and Roy is **GRANTED**.

The clerk is directed to enter judgment for the defendants and close this case.

SO ORDERED at Hartford, Connecticut this   24th       day of March, 2017.


_____/s/ DJS_____
DOMINIC J. SQUATRITO
UNITED STATES DISTRICT JUDGE